UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK BAUSS.,

                              CASE NUMBER: 04-73858

       Plaintiff,        HONORABLE VICTORIA A. ROBERTS

  v.

PLYMOUTH TOWNSHIP and
MCKENNA ASSOCIATES, Inc.

       Defendant(s).

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

**I.    INTRODUCTION**

This matter is before the Court on Defendant Plymouth Township's Motion to Dismiss or alternatively, for Summary Judgment and McKenna Associates' Motion for Summary Judgment. A hearing was held on July, 2005. For the reasons stated, the Court GRANTS Defendants' Motions.

**II.    BACKGROUND**

Plaintiff Frank Bauss filed a three-count lawsuit against Defendants. Plaintiff alleges: (1) that Defendant Plymouth violated his 14th Amendment procedural due process rights by failing to provide him with adequate notice and a hearing prior to amendment of the Township's 1993 Master Plan; (2) that Plymouth Township and McKenna Associates conspired to deprive him of

his 14th Amendment rights through delay and postponing tactics and; (3) that both Defendants caused intentional infliction of emotional distress upon Plaintiff.

Plaintiff is a developer who purchased a five-acre parcel of vacant land in 1978. The land was located in Plymouth Township, Michigan and was zoned R-1-H (Single Family; Low Density Residential; 21,780 sq. ft. minimum lot area). In 1993 the Township Planning Commission adopted a new Master Plan, which designated the property for high density residential future development. The Master Plan did not re-zone the property. On March 25, 1997 Plaintiff filed an application to re-zone his property to R-1-S (Single Family Residential; Residential Low Intermediate Density; 12,000 sq. ft. minimum lot area) (Plaintiff has filed a corrected brief which states that Plaintiff applied for R-2-S {low/medium density}, but his claim is contradicted by Defendant Plymouth's Exhibit G, a copy of Plaintiff's 1997 zoning application, which states the application is being for R-1-S zoning. Defendant Plymouth's Exhibit B, Schedule of Regulations, does not have R-2-S listed as a possible designation of density and Plaintiff has provided no evidence of what R-2-S is). Plymouth Township held a public hearing on May 21, 1997 and the Planning Commission recommended approval of the zoning variance application. However, the Township tabled the matter to review the issue of unpaid water bills and the file was closed three years later due to inaction. The application was not considered by the Township. Nevertheless, Plaintiff assumed the Zoning Board's recommendation had been approved by the Township Board of Trustees. This assumption was based on his conversation with Shirley Barney, the Community Development Director, who informed the Plaintiff that the Township generally always approved such applications.

In late 2000, Plaintiff approached the Township about developing the land, at which point he discovered that his 1997 re-zoning application had not been approved. Plaintiff again

applied for the zoning variance to R-1-S (R-2-S according to Plaintiff's corrected brief). On September 17, 2003 a Public Hearing was held and the application was tabled for again. The following day, September 18, 2003, Plaintiff withdrew the application and reapplied for a zoning to R-2-A (Multi-Family Residential; Residential High Density; 12,000 sq. ft. minimum lot area) based on the Master Plan designation. The Township began an investigation and concluded that there had been an error in the drawing of the lines on the Master Plan Map and that the plan designation of the subject property was to have remained low density residential.

In early October, 2003, the Township tabled the re-zoning application, on the advice of the Township's attorney, so it could address the amendment to the Master Plan. In response, on October 15, 2003, Plaintiff amended the re-zoning application to R-1 (Single Family; High Density Residential; 7,200 sq. ft. minimum lot area). That same day, the Planning Commission held a hearing and tabled the R-1 application to address the Master Plan amendment. Plaintiff was present at the meeting and was advised that the Township would propose an amendment to the Master Plan. Notice of the amendment was sent by publication in accordance with MCL 125.284.

On December 10, 2003 the Planning Commission approved sending the Master Plan amendment to the Township Board for review. Plaintiff was present and objected to the proposed amendment. He also objected to the tabling of his application for sixty days. Df. br. at p.4. Nonetheless, the application was tabled. On December 16, 2003, the Township Board approved distribution of the proposed Master Plan amendment to adjacent communities, governmental entities, and utility companies. The notices were sent by the Township on December 17, 2003.

3

On April 21, 2004, the Planning Commission held a public hearing on the amendment. It was adopted. The amendment corrected the Master Plan to show Plaintiff's property as planned for low intermediate density, R-1-S. Plaintiff was not present. A letter was sent to him advising him that the amendment to the Master Plan had been approved.

In response, on May 18, 2004, Plaintiff again amended the application for re-zoning seeking a change to R-2-A (multiple-family). Notice was sent. Many residents in the area objected to the application for re-zoning. McKenna Associates, the Township's Planning Consultant, recommended against the re-zoning. On July 21, 2004, the Planning Commission recommended denial for the following reasons:

1. The requested re-zoning is not consistent with the goals and policies of the Township Master Plan.
2. The current R-1-H is more consistent with the Future Land Use Plan that [sic: than] the requested R-2-A.
3. The requested rezoning could establish an undesirable zoning trend in the Township, which would undermine the orderly transition of densities.
4. The current R-1-H zoning is more appropriate to the nearby pattern of land division housing development than the requested R-2-A zoning.

*Planning Commission Minutes, July 21, 2004, Exhibit D*. The Township Board denied the re-zoning to R-2-A on August 17, 2004.

Defendant Plymouth files this Motion to Dismiss, or alternatively, for Summary Judgment, arguing that Plaintiff was given proper and adequate notice; Defendant McKenna Associates move for Summary Judgment for the same reason.

### III.     STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), Summary Judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

4

entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of Summary Judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, 53 F.3d at 149. Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. V. Catrett*, 4477 U.S. 317, 323 (1985).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule 56(e); Cox, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. "The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on

which a jury could reasonably find for the nonmoving party." *Id; See also Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

IV.   APPLICABLE LAW AND ANALYSIS

A. VIOLATION OF PROCEDURAL DUE PROCESS

To establish procedural due process violation under the 14th Amendment of the United States Constitution pursuant to U.S.C. 42 § 1983, Plaintiff must establish three elements: (1) that he has a life, liberty, or property interest protected by the due process clause of the 14th Amendment; (2) that he was deprived of this protected interest within the meaning of the due process clause; and, (3) that the state did not afford him adequate procedural rights prior to depriving him of his protected interest. *Hahn v. Star Bank*, 190 F.3d 708 (6th Cir. 1999) citing *Zinermon v. Burch*, 494 U.S. 113 (1990). The first question, then, is whether the Plaintiff has a property interest protected by the due process clause. The Court finds that he does not. In *G.M. Engineers and Associates, Inc. v. West Bloomfield Township*, 922 F.2d 328, 331 (1990) the court framed the issue of property interest around whether or not the board had discretion to deny the Plaintiff's application for a lot-split. The court stated:

> The viability of plaintiff's due process claim depends upon establishing that the local board did not have discretion to deny the proposed lot-split once the plaintiff complied with the mandatory minimal requirements. If, as held by the district court, the board members had discretion as to whether or not to approve the proposal, then plaintiff had neither a "legitimate claim of entitlement," *Board of Regents v. Roth*, 408 U.S. 564 (1972) (property interests), nor a "justifiable expectation," *Olim v. Wakinekona*, 461 U.S. 238 (1983) (liberty interests), in approval of the lot-split.

The Sixth Circuit has held that in order for a protected property interest to exist, there must be present a policy, law, or mutually explicit understanding that both confers a benefit and limits the discretion of the city to rescind the benefit. "We have previously recognized that a party

cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary" *Med Corp. Inc. v. City of Lima*, 296 F.3d 404, 410 (6th Cir. 2002) *citing Township of Brady*, 218 F.3d 508, 517 (6th Cir. 2000).

It is clear that Plymouth Township Board of Trustees had full discretion to approve Plaintiff's application for a zoning variance. Plaintiff claims to have a property interest in a zoning that never existed. The only property interest Plaintiff has is an interest in the property as he purchased it, R-1-H. This zoning never changed. Therefore, Plaintiff does not have the protectable property interest he claims. Under the unamended 1993 Master Plan, the Board of Trustees still had discretion to deny the application for a zoning variance. MCL 125.36 establishes the responsibility of a Board of Commissioners in creating a master plan. In relevant part MCL 125.36 reads:

> (1) The planning commission shall make and approve a master plan for the physical development of the municipality...
> (3) The municipal plan, with the accompanying maps, plats, charts, and descriptive matter shall show the planning commission's recommendations for the development of the territory...
> (4) The municipal plan shall address land use issues and may project 20 years or more into the future. The plan shall include maps, plats, charts, and descriptive, explanatory, and other related matter and shall show the planning commission's recommendations for the physical development of the municipality. The plan shall also include those of the following subjects which reasonably can be considered as pertinent to the future development of the municipality:
>> (a) A land use plan and program, in part consisting of a classification and allocation of land for agricultural, residences, commerce, industry, recreation, ways and grounds, public buildings, schools, soil conservation, forests, woodlots, open space, wildlife refuges, and other uses and purposes.

A Master Plan is a guide designed for making specific land use decisions. If a township is given authority to create a Master Plan "for the physical development of the municipality," then it must have authority to make zoning variances based on that Plan. A Master Plan does not

7

automatically re-zone property; it is merely one criteria used in deciding whether to approve a zoning variance request.

As Judge Easterbrook of the Seventh Circuit Court of Appeals noted in a case involving property owners seeking a zoning variance, "[w]ithout a legitimate claim of entitlement there is no property," *River Park, Inc. v. City of Highland Park*, 23 F.3d 164 (7th Cir. 1994) citing *Board of Regents v. Roth*, 408 U.S. 564 (1972). If Plaintiff was entitled to a zoning variance based on the unamended 1993 Master Plan or entitled to not have the Master Plan changed, then he may have been deprived of a property interest. However, there was no such entitlement and, therefore, no property interest was deprived.

"Changed or changing conditions may call for changed zoning plans, and persons owning property in a particular zone are not possessed of a vested right to that classification if public interest demands otherwise" *City of Ann Arbor, Mich. v. Northwest Park Const. Corp.*, 280 F.2d 212 (6th Cir. 1960). Defendant Plymouth has the right to change its Master Plan in the best interest of the public. Plaintiff did not have a vested right to the 1993 Master Plan classification because Plymouth has the final authority to amend its Master Plan. Plaintiff does not have a property interest protected by the due process clause in a Master Plan amendable at any time at the discretion of Defendant Plymouth.

The first element necessary to bring a claim under 42 U.S.C. § 1983 has not been satisfied. Thus, this court will not address the issue of procedural due process because Plaintiff has not established that he has a constitutionally protected property interest.

Since Plaintiff fails to establish he has a protectable property interest in a zoning classification, his due process claim under § 1983 fails; no constitutional violation has been

demonstrated.

**B. CONSPIRACY CLAIM**

The parties dispute whether Plaintiff has stated a proper claim under 42 U.S.C. §1983. In pertinent part, §1983 reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other property proceeding for redress.

To bring a conspiracy claim under §1983 against Defendants Plymouth and McKenna, Plaintiff must show that: 1) the government can be a "person" for purposes of 1983; and, 2) 1983 supports a conspiracy claim. Plaintiff has met both of these requirements. The Supreme Court has held that, "[o]ur analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress did intend municipalities and other local government units to be included among those persons to whom §1983 applies." *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690 (1978). In addition, the Sixth Circuit has held that, "[e]ven apart from the state action-color of law issue, an extensive body of §1983 conspiracy case law has developed." *Smith v. Oakland County Circuit Court*, 344 F. Supp.2d 1030 (E.D. Mich. 2004) *citing* NAHMOUD, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION, § 2:21, p 2-86 (4th ed. 2003). Nevertheless, Plaintiff's claim fails.

For a conspiracy cause of action under 42 U.S.C. §1983, Plaintiff must first establish a constitutional deprivation. The alleged deprivation in this case is a protectable property interest that does not exist, discussed *supra*. Since Plaintiff has failed to establish a genuine issue of

9

material fact over his constitutional claim, the claim fails.

C.   **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Defendant argues that the government is immune from the alleged intentional tort claim pursuant to M.C.L. 691.1407(1), which reads:

> Except as in this Act otherwise provided, all governmental agencies shall be immune from tort liability in cases wherein the governmental agency is engaged in the exercise or discharge of a governmental function.

A Governmental function is "an activity which is expressly or impliedly mandated or authorized by constitution, statute, or other law." *Ross v. Consumer Power Co.*, 363 NW2d 641 (1984). However, "[g]overnmental immunity in Michigan law is an affirmative defense that Defendants must prove" *Townshend v. Hazelroth*, 875 F.Supp. 1293 (1995).  M.C.L. 691.1407 does not provide absolute protection from tort liability to governmental entities. "[I]ntentional tort is not within the exercise or discharge of a governmental function and governmental immunity is not available as a defense to an intentional tort." *Mosqueda v. Macomb County Youth Home*, 349 N.W.2d 185 (1984). It is clear that Defendant Plymouth Township is barred from raising governmental unity as an affirmative defense against Plaintiff's intentional tort claim. The court now addresses the substantive issue of the claim.

In *Ledsinger v. Burmeister*, 318 N.W.2d 558 (1992), the court adopted the standards set forth in 1 Restatement Torts, 2d §46, pp. 71-72, for a claim of intentional infliction of emotional distress:

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

The court further explains that, "with regard to the requirement that the defendant's conduct be

'extreme and outrageous', §46, comment d, p. 73 of the Restatement states:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'  *Ledsinger*, 318 N.W.2d at 18.

Plaintiff's complaint fails to allege sufficient facts to establish "extreme and outrageous conduct."  Plaintiff primarily relies on the assertion that the Defendants conspired to deny Plaintiff of his property rights.  However, as addressed above, Plaintiff did not have a protected property interest.  Further, viewing the evidence in the light most favorable to Plaintiff, it is clear that Defendants abided by the statute in amending the Master Plan.  No intentional infliction of emotional distress is demonstrated here.

### VI.   CONCLUSION

The Court **GRANTS** both Defendants' Motions for Summary Judgment on all counts. Judgment will enter for Defendants

I<span/>T IS SO ORDERED.

                                                  **VICTORIA A. ROBERTS**
                                                  **UNITED STATES DISTRICT COURT**

**Dated: 7/27/05**

                                                  /s/ Victoria A. Roberts